## U.S. DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL PLASTICS & EQUIPMENT CORP.,<br>    Plaintiff,<br>v.<br><br>TAYLOR'S INDUSTRIAL SERVICES, LLC,<br>    and<br>SANDRETTO USA, INC.,<br>    Defendants. | CIVIL ACTION NO.: 07-CV-1053 |

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND JUDGMENT BASED UPON ADMISSIONS OR ALTERNATIVELY FOR SANCTIONS FOR FAILURE TO PARTICIPATE AND COOPERATE IN DISCOVERY IN AID OF EXECUTION**

COMES NOW, Plaintiff International Plastics & Equipment Corp., by and through its counsel, John H. Williams, Jr., and Eckert Seamans Cherin & Mellott, LLC, and, having filed its motion seeking to amend the judgment entered against Defendant Sandretto USA, Inc., to name as judgment debtors those individuals and companies controlled by them and who have failed to participate in discovery in aid of execution in furtherance of these efforts, as well as its brief in support, files the within Supplemental Brief in Support as directed by this Honorable Court.

**I.    Argument**
    **A.  Introduction**

On March 9, 2010, Plaintiff International Plastics & Equipment Corp. ("IPEC") filed with this Court it Motion seeking to amend the judgment based on the admissions by Judgment Debtor Sandretto USA, Inc., that, summarily stated, admitted that Sandretto USA, Inc., and its key managerial officers, directors and employees had been engaged in an scheme to deplete the assets of the company in order to thwart creditors, such as Plaintiff IPEC. The Motion offered as an alternative basis for the relief sought that Sandretto USA, Inc., and any key managerial officer, directors and employees engaged in such a scheme be held in contempt based on any combination

of the admissions and their individual and collective failure to respond any number of times to their obligations to this Court and these proceedings. Such failures *at that time* included failure to attend, or even respond, to Court-ordered conferences, failure to respond to proceedings seeking a default, and failure to respond to discovery in aid of execution.[1] Docket 50.

On March 16, 2010, Plaintiff IPEC filed its brief in support of the motion, setting forth discussion of the law which would permit this Court, as an exercise of discretion, to grant the requested relief. That Brief discussed the relevant law in this area as follows:

> Recognizing that the power "to punish for contempt" should not be used lightly, the Supreme Court has stated that this power "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory." <u>Gompers v. Buck's Stove & Range Co.</u>, 221 U.S. 418, 450 (1911). Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner. <u>NLRB v. Cincinnati Bronz, Inc.</u>, 829 F.2d 585, 590-91 (6th Cir. 1987). A district court has the inherent power to enforce its orders by contempt proceedings. <u>Id.</u> With respect to civil contempt proceedings, "[j]udicial sanctions ... may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." <u>United States v. United Mine Workers of Am.</u>, 330 U.S. 258, 303-04 (1947).
>
> Moreover, **a corporate officer can be held in contempt for violation of an order directed solely to the company of which he is an officer**. Many decades ago, in a case where a corporate officer who failed to comply with a subpoena *duces tecum* had been held in contempt, the United Supreme Court stated:
>
>> **A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs.** If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance

---

[1] Mr. Filos' counsel is fond of arguing that Mr. Filos was without counsel at the time that discovery in aid of execution in this case was pending, and was unable to afford counsel so that he could discern his responsibilities to this Court. However, while Plaintiff IPEC was engaged in that discovery in aid of execution, Mr. Filos's retained counsel were actively fending off IPEC's efforts in Ohio courts to garnish bank accounts then maintained with Huntington Bank, filing pleadings, reliably false and attending arguments before the Ohio Court. The fact and nature of such proceedings — in which Mr. Filos filed a false affidavit stating that Taylor's Industrial Services and HPM, Inc., were unrelated, a claim later pierced by the Court on behalf of the Receiver for Taylor's Industrial Services — is set forth in some detail in the pending Motion.

2

> of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt

Wilson v. United States, 221 U.S. 361, 376 (1911) (corporation can be proceeded against in its corporate capacity at the same time that officers "are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation.") (emphasis added).

The Third Circuit has so held on more than one occasion. In Quinter v. Volkswagen of America, 676 F.2d 969, 972 (3d Cir. 1982), the Third Circuit Court set forth:

> It is not necessary that the person be formally served with the order, or that the violation be willful, Farber v. Rizzo, *supra*, or that there be intent to violate the court order. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599, 604 (1949); Woolfolk v. Brown, 358 F.Supp. 524, 534 (E.D.Va.1973); United States v. Ross, 243 F.Supp. 496 (S.D.N.Y.1965). **In order for a person not a party to the proceeding to be found in contempt, he must have actual knowledge of the order, and he "must either abet the defendant, or must be legally identified with him."** Alemite Manufacturing Corp. v. Staff, 42 F.2d 832, 833 (2d Cir. 1930), *quoted in* Backo v. Local 281, Carpenters and Joiners of America, 438 F.2d 176, 181 (2d Cir. 1970), *cert. denied*, 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971). *See also* Wright v. County School Board, 309 F.Supp. 671, 676-77 (E.D.Va.1970), *rev'd on other grounds sub nom.,* Wright v. Council of the City of Emporia, 442 F.2d 570 (4th Cir. 1971), *rev'd*, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972).

Quinter, *at* 973, *quoting* Thompson v. Johnson, 410 F.Supp. 633 (E.D.Pa.1976) (emphasis added). *See*, Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669 (3rd Cir. 1999) (court has power to hold in contempt, not just party before the court, but also one with knowledge of a court order who abets another, who is therefore "surely in contempt"); Roe v. Operation Rescue, 919 F.2d 857 (3d Cir. Pa. 1990) (case law establishes that individuals, who are neither parties to a proceeding nor named in the court order at issue, may nonetheless be subject to the court's contempt powers if they have "knowledge of a valid court order and abet others in violating it."). *See also*, Electrical Workers Pension Trust Fund of Local Union #58, IBEW, 340 F.3d 373, 379 (6th Cir. 2003) (reversing district court determination that the court lacked jurisdiction to find contempt against corporate officers and collecting cases holding to the contrary); Cent. States, Southeast and Southwest Areas Pension Fund v. Wintz Props., Inc., 155 F.3d 868, 876 (7th Cir. 1998) (company's president and owner, a non-party to the lawsuit, also subject to injunction when the court's order was directed at the company and its officers); Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 507 (8th Cir. 2000)

> (corporate officer can be bound by a court's payment orders even when the "orders [make] no specific reference to him."); NLRB v. Sequoia Dist. Council of Carpenters, AFL-CIO, 568 F.2d 628, 633 (9th Cir.1977) ("It can hardly be argued that the principal officers of a labor union are not legally identified with it, and thus liable in contempt for disobeying an order directed to the union."); Backo v. Local 281, United Bhd. of Carpenters & Joiners, 438 F.2d 176, 180 (2d Cir. 1970), *cert. denied* 404 U.S. 858 (1971).

Brief in Support of Motion, pp. 2-4 (all emphasis in original Brief.) Docket 52.

On April 23, 2010, more than a month after Plaintiff IPEC filed is motion and brief, counsel for Sandretto USA, Inc., Mr. Filos, and the other persons identified by Sandretto's admissions (other than Mr. Finley), filed a brief in opposition. Docket 55. That Brief cited not a single statute. That Brief cited not a single case. That Brief cited not a single authority of any kind. Rather, that "Brief" baldly advanced the heading "There Is No Authority Permitting the Court to Impute the Corporate Judgment to the Individuals," and then provided *nothing* in support.

Notwithstanding the naked assertion of that Brief, at the evidentiary hearing scheduled by this Court, Attorney Daley conceded in the face of this Court's questioning that his client actually was amendable to a contempt citation and could in fact therefore have personal liability in these proceedings.

Plaintiff IPEC at that time, apprised for the first time that defense counsel had secured the Court's permission to absent the individuals from attendance at the proceedings, put on the evidence that it had. Plaintiff's evidence shows a pattern of Mr. Filos and a certain cadre of individuals — set forth in the discovery in aid of execution and in the motion for sanctions — moving entity-to-entity in an attempt to drain assets, responsibility and a traceable trail from the predecessor to the successor. Assets moved first to Taylors, Industrial, then to HPM, Inc., then to Polaris America, Inc. Mr. Filos and his gang would follow, leaving corporate shells and creditors behind.

In furtherance of that tactic with regard to Sandretto USA, Inc., Mr. Filos' own testimony was that there came a time when Sandretto had not a single employee. When a function had to be performed on behalf of Sandretto, someone from Taylors, also owned by Mr. Filos and located at the same address, would cover that function. Sandretto was, in Mr. Filos' view, an empty house where he alone operated, unless it was necessary that someone else work there as well, such as Edward Finley. Mr. Filos testified in his deposition that Mr. Finley was the CFO of "HPM, Taylors, Sandretto, all of them." That testimony was offered in the hearings twice.

Evidence showed that Mr. Filos listed himself as the sole shareholder for Sandretto, USA, Inc., and evidence showed that Sandretto USA, Inc., effected a shareholder loan for $300,000, which was forgiven the next year as "uncollectible." This debt to Sandretto USA, Inc., was not identified in Sandretto's responses to discovery. Evidence also reflected a second transaction, this time actually between Sandretto and Taylors Industrial for approximately $300,000, which was also forgiven as uncollectible. This debt to Sandretto USA, Inc., was not identified in Sandretto's responses to discovery.

The Court will recall, and the transcript of proceedings reflects, Mr. Barbin stating in chambers, repeatedly and in no uncertain terms, that Mr. Filos had no connection whatsoever with Polaris America, Inc. Mr. Filos stated from the witness stand when he was under oath that he had in fact been its CEO until very recently. Review of the affidavits of service will confirm that Mr. Filos was served with this Court's orders at Polaris America, Inc., along with several of his troupe.

At the second hearing on this Motion, on May 11, 2010, this Court **ordered** that Mr. Filos respond fully to the requests for production within 7 days: *i.e.*, **May 18, 2010.** The Court **ordered** further that responsive documents which were in the possession of the prosecutor of Morrow County, Ohio, would be due "**not later than 6/1/2010.**"

5

Not one single document was produced until Friday, June 11, 2010, *two business days before the third hearing* in this matter, and, at that hearing, counsel for Filos chastised undersigned counsel for not going and getting document himself once he saw how little was produced two business days before the hearing. Even then, the 65 pages produced were but a random, largely useless smattering of documents hardly reflective of what had been sought in discovery and ordered by this Court. The actual production, along with the cover letter establishing the date of production, was admitted into evidence as an exhibit.

The discovery in aid of execution sought:

1. All of Judgment Debtor's tax returns , including city, state and federal returns, from 2005 to the most recently filed. Such return should include, without limitation, all schedules.

Notwithstanding this Court's order, only two federal tax returns were provided: 2006 and 2008. The reason given for not providing anything else was Mr. Filos contention that the accountant was owed money. While Mr. Filos can afford both Ohio and Pennsylvania counsel to stave off collection efforts, and owns a business with an airplane by which he commutes from New Jersey, one would readily infer that he can pay his accountant. In any event, such documents are available from the IRS and by subpoena from the accountant in any event.

The discovery in aid of execution sought:

2. All of Judgment Debtor's bank account statements and brokerage statements of any kind, including checking, savings, investment accounts or any other accounts, from 2005 through the present.

Notwithstanding this Court's order, not one such statement was provided, although same would be available from the relevant banking institutions.

The discovery in aid of execution sought:

3. All of Judgment Debtor's ledgers and other documents showing the source of all revenues, financial deposits or invested moneys, including without limitation statements of accounts receivable at any time from 2005 through the present.

Notwithstanding this Court's order, not one such document was provided although same would be available from the relevant banking institutions.

The discovery in aid of execution sought:

> 4. All of Judgment Debtor's ledgers and other documents showing the source of all revenues, financial deposits or invested moneys, including without limitation statements of accounts receivable at any time from 2005 through the present.

Notwithstanding this Court's order, not one such statement was provided, although same would be available from the relevant banking institutions.

The discovery in aid of execution sought a plethora of documents which would have been available from outside entities even if every such document previously in Sandretto's possession were in fact unavailable on the basis that the Prosecutor is now not able or not willing to make them available (a claim which has never been substantiated). By way of example, but not limitation, Plaintiff IPEC submits the following:

> a. all financial statements — available from accountants;
> b. all statements of revenues and expenses — available from accountants;
> c. all statements of work in progress — possibly available from accountants;
> d. all statements of inventory — possibly available from accountants;
> e. all statements of accounts receivable — possibly available from accountants;
> f. a complete inventory of assets of all kinds possibly available from accountants;
> g. financing statements — available from courts;
> h. contracts, leases, licenses and agreements of any kind — available from parties with whom Sandretto contracted;
> i. deeds, land contracts, and other documents showing any ownership or other interest in real property — available from local deed offices;
> j. property tax bills, appraisals, and any other documents showing the value of any real estate owned — available from local tax assessors;
> k. mortgages, whether secured by real estate or other property, to which Judgment Creditor is a party, either as mortgagee or mortgagor — available from banks and contracting parties;
> l. insurance policies owned in whole or in part by Judgment Creditor, and all insurance policies on which Judgment Creditor is named as a beneficiary — available from insurers and brokers;

    m. Titles to all vehicles owned in whole or in part — available through the Ohio Department of Motor Vehicles;

    n. stock certificates, bonds, certificates of deposit, or other forms of ownership or investment owned by Judgment Creditor — available through issuer;

    o. financial information submitted to any bank or financial institution for any purpose — available from said banks and institutions;

    p. Judgment Creditor's Annual Reports as filed with any state or other governmental entity — available from the state or governmental entity;

    q. documents reflecting any transfer, conveyance or exchange of cash, property, rights, obligations or value between Judgment Creditor and Richard Eichler — available from Richard Eichler;

    r. documents reflecting any transfer, conveyance or exchange of cash, property, rights, obligations or value between Judgment Creditor and Gerard J. Sposato — available from Gerard Sposato;

    s. documents reflecting any transfer, conveyance or exchange of cash, property, rights, obligations or value between Judgment Creditor and Dean M. Francis — available from Dean Francis;

*See generally*, Discovery in Aid of Execution, Docket 50-1 and 68.

### B. Supplemental Legal Discussion

Sanctions are available, in the Court's discretion, for violations of Rule 11. Rule 11 is violated where one files with the Court any pleading, motion or other paper, or by later advocating such positions, with the purpose of causing unnecessary delay or needlessly increasing the costs of litigation. Plaintiff IPEC submits that any number of the positions asserted by Sandretto USA, Inc., Mr. Filos and his counsel fall within the strictures and limitations of Rule 11, from advocating to this Court that Mr. Filos has no connection to Polaris, Inc., when weeks before he was its CEO, from waiting until two days before the third evidentiary hearing to serve a document production 10 days after the production had been ordered and to produce not one single document other than what was supposedly obtainable from an out-of-state prosecutor is just such conduct.

Sanctions are available, in the Court's discretion, for violations of Rule 16. Rule 16(f)(1)(A)-(C) provide that a party may be sanctioned by the Court for failing to appear at scheduling or other pretrial conferences, is substantially unprepared to participate, does not

participate in good faith in such a proceeding and/or does not obey a scheduling or other pretrial order. Plaintiff IPEC submits that any number of the positions asserted by Sandretto USA, Inc., Mr. Filos and his counsel fall within Rule 16 prohibitions. Sandretto, at the direction of Mr. Filos, failed and refused to attend several pretrial proceedings prior to the default judgment. Mr. Filos did not comply in any meaningful manner with this Court's discovery orders in connection with the pending motion, either in terms of timeliness, effort or the substance of the production. Plaintiff IPEC submits that his testimony could easily be found, and should be found, to have been far from the level or candor required by an oath to the Court. At times, Mr. Filos tried to suggest to the Court that the payroll of thousands of employees at Sandretto drained his assets; at other times, he claimed that he was the only person at Sandretto and no one else had any responsibility. Mr. Filos admitted being the CEO of Polaris America, LLC, although his counsel argued to the Court just weeks earlier that Mr. Filos had no connection with Polaris America, LLC, whatsoever. While irrelevant to whether Plaintiff IPEC is entitled to a judgment against him, he claims poverty and other judgments while commuting in his private plane owned by yet another of his companies.

To the extent these proceedings fall within Rule 37 as discovery proceedings, sanctions are available for evasive or incomplete answers, disclosures or responses. Rule 37(a)(4). Given that this Court ordered that Mr. Filos produce the documents requested, and without adequate basis, he neither complied in a timely fashion nor in a meaningful fashion, sanctions are available under Rule 37(b)(2)(A) for not obeying a discovery order. The numerous available sanctions include a judgment against the party opposing relief.

This Court also has authority to sanction pursuant to 28 U.S.C. § 1927, which codifies this Court's inherent power to enforce its jurisdiction and manage the matters which come before it.

## II. Conclusion

WHEREFORE, Judgment Debtor Sandretto USA, Inc., and Mr. Filos having engaged in transactions intended to frustrate discovery and collection of this Court's judgment, and also being engaged in fraudulent conveyances in furtherance of that scheme, Judgment Creditor Plaintiff International Plastics & Equipment Corp. moves this Honorable Court to grant the relief sought in PLAINTIFF'S MOTION TO AMEND JUDGMENT BASED UPON ADMISSIONS OR ALTERNATIVELY FOR SANCTIONS FOR FAILURE TO PARTICIPATE AND COOPERATE IN DISCOVERY IN AID OF EXECUTION.

    /s/ John H. Williams, Jr.
John H. Williams, Jr.
Pa.I.D. # 59662
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, Suite 4400
Pittsburgh, PA 15219
412.566.2037

Counsel for Plaintiff