IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INTERNATIONAL PLASTICS    )
EQUIPMENT CORP.,      )
           )
     Plaintiff,    )
           )
    vs.        )  Civil Action No. 07-1053
           )
TAYLOR'S INDUSTRIAL SERVICES, )
LLC and SANDRETTO USA, INC.,  )
           )
    Defendants.   )

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff's motion for
sanctions and to amend the judgment previously entered in this
case to include as a debtor one or more of Defendants' officers
or key employees. (Doc. No. 50, "the Motion.") For the reasons
that follow, we impose monetary and other sanctions on Sandretto
USA, Inc. ("Sandretto") and Christopher Filos but do not grant
the motion to amend the judgment.

**I. BACKGROUND**

A.  Events Leading up to the Default Judgment

The facts and procedural history of this rather
straight-forward breach of contract case are detailed in the
Court's previous Memorandum Opinions at Docket Nos. 29 and 79.
The events which give rise to the pending motion for sanctions
and to amend the judgment began in August 2008, shortly after
the Court had granted partial summary judgment in favor of

Defendants Sandretto and Taylor's Industrial Services ("Taylor's"), and dismissed a third Defendant, HPM, A Taylor's Company ("HPM.") Before undertaking pre-trial efforts, the Court ordered Sandretto, Taylor's, and Plaintiff International Plastics & Equipment Corporation ("IPEC") back to mediation in an attempt to resolve the remaining issues. At the time, no one informed the Court – or apparently IPEC -- that Taylor's had ceased operations in June of that year.[1]

When the mediation was unsuccessful, the Court set a final pre-trial conference for December 18, 2008. On December 9, 2008, the Court granted a motion by Defendants' counsel for leave to withdraw, citing non-payment. The pre-trial conference was postponed until January 20, 2009, to allow Defendants an opportunity to obtain new counsel. Retiring counsel were specifically directed to provide Sandretto and Taylor's with a copy of the order directing them to obtain new counsel and the Court had no reason to believe counsel did not do so. Despite these precautions, no one appeared at the January 20, 2009 conference on behalf of Defendants, no law firm entered its appearance prior to that date, and no one from Sandretto or Taylor's contacted the Court about a further postponement of the conference or otherwise offered any excuse for failing to appear. At the January 20 conference, the Court agreed with

---

[1] *See* Fifth Receiver's Report, Doc. No. 94-5, at 10.

IPEC's counsel that the appropriate next step was to file for a default judgment against Taylor's and Sandretto. Again, there was no indication that Taylor's was not operating. Following another case management conference on February 19, 2009,[2] again with no one representing Defendants, the Clerk of Court entered default judgment in favor of IPEC and against Defendants Taylor's and Sandretto in the amount of $351,653 on March 11, 2009. (Doc. No. 49.)

## B. Plaintiff's Motion to Amend the Judgment[3]

The Court took no further action in this matter until one year later when Plaintiff filed the now-pending Motion on March 9, 2010. In the Motion, IPEC argued that during the year following entry of the default judgment, a number of individuals associated with Sandretto had engaged in fraudulent conveyances of money, property, and assets from Sandretto to themselves or to companies controlled by them in an effort to intentionally render Sandretto insolvent and unable to pay the judgment against it.

As discussed in more detail in the Court's Memorandum Opinion of September 29, 2010 (Doc. No. 79), after neither

---

[2]    The Court took the precaution of sending a paper copy of the Order setting this conference directly to the attention of Christopher Filos at the joint address of Sandretto and Taylor's in Mount Gilead, Ohio, in addition to an electronic copy sent to www.taylorsind.com.    *See* Doc. No. 45 at 2.

[3]    The facts in this section are all taken from the Motion unless otherwise noted.

3

Sandretto nor Taylor's had made any effort to pay the default judgment, IPEC attempted to garnish an Ohio bank account in which it believed Taylor's had an interest, only to learn that a previously unknown entity, HPM America, LLC ("HPM America"), claimed that the account was its property, not Taylor's. An affidavit by Christopher Filos, identified as the former president of Taylor's and current president of HPM America, was submitted in support of this claim and of the assertion that HPM America was an entity separate and distinct from either Taylor's or Sandretto. IPEC also learned for the first time that Taylor's had been placed into receivership in the Court of Common Pleas of Franklin County, Ohio, as of July 31, 2009, thereby staying all litigation against it.

Counsel for IPEC then contacted the appointed Receiver for Taylor's who advised him that Taylor's, Sandretto, and HPM America, as well as the officers, banking, tangible assets, and real estate of those entities were "heavily intermingled," and that Taylor's officers were being "singularly uncooperative" in the receivership process.[4] Based on this information, IPEC

---

[4] The Receiver sought and obtained leave to intervene in the IPEC garnishment action and advised the Ohio court, among other things, that (1) HPM America was 100% owned by Mr. Filos, (2) a purported personal property lease between Taylor's as lessor and HPM America as lessee (covering all of Taylor's equipment, intellectual and property lines) constituted a conversion of collateral for a bank loan made to Taylor's; and (3) there was "reason to believe" that Taylor's and HPM America were alter ego entities and if such a relationship could be shown, HPM America could have successor liability for Taylor's

4

served discovery in aid of execution on Taylor's and Sandretto on October 9, 2009. The discovery included numerous requests for production and interrogatories demanding that Sandretto provide financial records for the period 2005 through the present and it was served at multiple locations on Mr. Filos and several other individuals described as "persons known or believed to be officers and/or key managerial employees" of Sandretto or HPM America. Neither entity responded to the discovery, which focused on the relationships and activities of Sandretto, Mr. Filos, Richard Eichler, Gerard J. Sposato, Douglas Filos, and Joseph Filos,[5] particularly the transfer of property, assets and/or cash from Sandretto to those Individuals and to HPM America. None of the Individuals responded to the requests for admission and later asserted that they had never been served and never learned of the litigation until they were on the verge of being held in contempt.

---

obligations  The Receiver relied on the following factors in support of this assertion: the same ownership and management of the two companies; Taylor's previous designation as a division of HPM, with only the inclusion of an LLC designation to differentiate HPM and HPM America; similarity of logos and interrelationship of internet websites; and signage on the building formerly used by Taylor's when it was operating as HPM Division, Taylor's Industrial Services. In the face of these assertions, HPM America withdrew its claims and gave the Receiver access to a portion of the bank account in question.

[5]  Collectively, Messrs. Eichler, Sposato, Joseph Filos and Douglas Filos will be referred to as "the Individuals."  IPEC subsequently agreed to dismiss three other persons formerly associated with Sandretto, Taylor's or related entities – Edward Finley, Dean Francis, and William Purcell – from further consideration.

Four months after the date on which the responses to the discovery in aid of execution were due, IPEC filed the pending Motion seeking an Order of Court (1) amending the judgment entered on March 11, 2009, to name Mr. Filos and the Individuals as additional judgment debtors thereunder and (2) subjecting them to arrest and imprisonment in the event such judgment was not paid in full within 30 days of the Order.

## C. The Court Hearings

In the year since IPEC filed the Motion, the Court has held four hearings on the question of whether the judgment against Taylor's and Sandretto could be amended to include Mr. Filos or the Individuals and to take testimony regarding the Motion for sanctions against Sandretto, Mr. Filos, and the Individuals. On April 15, 2010, John M. Daley of Brennan, Robins & Daley, P.C., entered his appearance on behalf of Taylor's and Sandretto. Five days later, despite not representing the Individuals or Mr. Filos, Mr. Daley filed a brief in opposition to the pending Motion in which he argued - without citation to statute or case law -- that there was no authority which would permit the Court to impute the corporate judgment to the Individuals; in fact, he stated, such authority "simply does not exist." (Doc. No. 55.) Bradley Barbin, Esq., entered his appearance for the limited purpose of representing

Mr. Filos at a continuation of the first hearing scheduled for May 11, 2010, but continued to represent him thereafter.

At the May 11, 2010 hearing, Plaintiff and the Court learned for the first time that many of the documents which would theoretically be responsive to the discovery in aid of execution were being held by the Morrow County, Ohio, prosecutor in connection with a criminal investigation involving Mr. Filos. At the Court's order, Plaintiff served Sandretto and Mr. Filos with yet another copy of the discovery in aid of execution to which they were directed to respond within seven days of the date on which they were served. Any relevant documents which were in the possession of the Morrow County prosecutor were to be provided to Plaintiff not later than June 1, 2010.

A third hearing was held on June 15, 2010, at which Mr. Filos testified under oath. The Court learned for the first time that according to Mr. Filos, Sandretto had gone out of business sometime in 2008. On July 27, 2010, Plaintiff advised the Court, via a copy of the Ohio Receiver's Third Report, that in late December 2009, under the guise of a Christmas furlough, HPM America had also ceased operations. Concurrently, yet another new company controlled by Mr. Filos, Polaris America, LLC ("Polaris"), began using Taylor's Mt. Gilead, Ohio, facilities but had refused to provide the Receiver with any information about its activities. In the meantime, Taylor's was

continuing to resist efforts by the Receiver to assist in the liquidation of its assets and had failed to respond to discovery requests.

In a Memorandum Opinion and Order entered on September 29, 2010, the Court held Sandretto in contempt for failing to take any affirmative action to satisfy the default judgment entered in March 2009, failing to respond to the discovery in aid of execution in October-November 2009, and providing false and incomplete information to IPEC and the Court in the responses it did provide. As the "controlling power" of Sandretto and Taylor's, Christopher Filos was also held in contempt for Sandretto's actions listed above. The Court withheld a decision on the culpability of the other Individuals with regard to Defendants' actions or inactions, but ordered them to appear at a hearing on October 13, 2010, to show cause why they should not also be held in contempt. The Court indicated it would hear argument at the same hearing on the sanctions to be imposed as a consequence of the contempt by Sandretto and Mr. Filos. Mr. Filos was directed to appear at the hearing and to be represented by counsel. Each of the Individuals and Mr. Filos was directed to file a brief with the Court outlining the arguments they intended to make at the show cause hearing.

Douglas Filos sought to be excused from appearing at the hearing on the grounds that it would be a financial hardship for

him to travel from Georgia to Pittsburgh for the one-day hearing or to hire counsel to represent him; the Court excused him from attending in person or being represented but required him to be available by telephone during the hearing. Joseph Filos, through counsel, advised the Court that he had filed for protection under Section 7 of the Bankruptcy Code the same day and the claims against him were stayed. Counsel for Mr. Sposato and Mr. Eichler entered an appearance and those two Individuals appeared at the hearing. The Court ordered that although Messrs. Sposato, Eichler and Douglas Filos remained subject to the Order of Court entered on September 29, 2010, no further action was required of them until further notice from the Court or counsel for IPEC or Sandretto.

Following the October 13, 2010 hearing, based on representations from counsel for Sandretto and Mr. Filos that their clients were willing to attempt to resolve the outstanding issues as amicably as possible, Plaintiff was permitted to depose Christopher Filos and, if necessary, Messrs. Eichler, Sposato, and Douglas Filos. The Court asked for a status report from counsel for IPEC, Sandretto and Christopher Filos - either jointly or individually -- on or before January 14, 2011. (Doc. No. 89.) Mr. Daley withdrew his appearance on December 29, 2010, citing reasons of "non-payment/lack of cooperation," a conflict-of-interest among the Individuals, Mr. Filos and

Sandretto, and his own change of employer. No new counsel for Sandretto has entered an appearance or filed the status report. Although he continues to be represented by Mr. Barbin, Mr. Filos never filed a status report.

## II. **IMPOSITION OF SANCTIONS**

### A. Forms and Types of Sanctions

The Supreme Court has long recognized that while it should be sparingly used, the power to punish contempt

is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory.

Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911); see also Roadway Express v. Piper, 447 U.S. 752, 764 (1980) (a judge must have and exercise with restraint and discretion the inherent power of the contempt sanction in order to protect the due and orderly administration of justice and to maintain the authority and dignity of the court.)

Courts possess an inherent power to assess sanctions where a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons," for example by "delaying or disrupting the litigation or by hampering enforcement of a court order." Chambers v. NASCO, 501 U.S. 32, 45-46 (1991) (internal citations and quotations omitted.) The Supreme Court distinguishes between civil and criminal contempt, describing civil contempt sanctions

10

as "remedial and for the benefit of the complainant" and criminal contempt sanctions as "punitive, to vindicate the authority of the court." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827-828 (1994); *see also* Roe v. Operation Rescue, 919 F.2d 857, 868 (3d Cir. 1990). Another distinction is that a contemnor may purge a civil contempt sanction by performing "an affirmative act," as compared to a criminal contempt sanction which is "imposed retrospectively for 'a completed act of disobedience'. . .such that the contemnor cannot avoid or abbreviate" the penalty through "later compliance." Bagwell, id. at 828-829, *quoting* Gompers, id. at 443. "[C]ivil contempt may be employed to coerce [a party] into compliance with the court's order and to compensate for losses sustained by the disobedience." McDonald's Corp. v. Victory Inv., 727 F.2d 82, 87 (3d Cir. 1984). "Coercive sanctions. . . look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or. . .by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience." Id., *quoting* Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1344 (3d Cir. 1976).

In the context of civil contempt, a district court may impose a wide range of sanctions. FTC v. Leshin, 618 F.3d 1221, 1239 (11th Cir. 2010) (the court's discretion in imposing such

11

sanctions "is particularly broad and only limited by the requirement that they be compensatory") (internal quotation omitted); Merrill Lynch Bus. Fin. Servs. v. Kupperman, CA No. 06-4802, 2007 U.S. Dist. LEXIS 78880, *7 (D.N.J. Oct. 23, 2007) (the district court has "great discretion" in deciding to impose coercive sanctions and the form thereof.) In reality, coercive sanctions for civil contempt have generally taken the form of incarceration, fines, or both. Gilgallon v. County of Hudson, CA No. 02-5948, 2006 U.S. Dist. LEXIS 46825, *7-*8 (D.N.J. July 10, 2006), *citing* Gompers, 221 U.S. at 442. A third alternative is reimbursement of costs incurred by the complainant in pursuing compliance with the court's orders.

1. *Incarceration:* In civil contempt proceedings, incarceration is not imposed as punishment, but as a means of "coercing the party to do what he or she has previously refused to do." Gilgallon, 2006 U.S. Dist. LEXIS 46825 at *8.

> The paradigmatic coercive, civil contempt sanction. . .involves confining a contemnor indefinitely until he complies with an affirmative command such as an order "to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." . . . In these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus "carries the keys of his prison in his own pocket."

Gewin v. Dodrill, CA No. 09-3612, 2010 U.S. Dist. LEXIS 16000, *12-*13 (D.N.J. Feb. 23, 2010), *quoting* Bagwell, 512 U.S. at 827-28.

The incarceration sanction may be imposed if the contemnor fails after a designated period of time to comply with a court's order or may take the form of imprisonment for a fixed term, provided that the contemnor has the option of earlier release if he complies. Shillitani v. United States, 384 U.S. 364, 370, n. 6 (1966) (upholding as a civil contempt sanction "a determinate sentence which includes a purge clause"); see also Chadwick v. Janecka, 312 F.3d 597, 608 (3d Cir. 2002) (a contemnor who has the ability to comply with the underlying court order may be confined indefinitely until he complies.) To purge himself from contempt and thus avoid or terminate his confinement, the contemnor need only comply with the contempt order or show by clear and convincing evidence that he is presently unable to comply with it. United States v. Rylander, 460 U.S. 752, 757 (1983) (the court should "not be blind to evidence that compliance is factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action.")

2. *Fines:* A contempt fine "is considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or]. . .compensate[s] the complainant for losses sustained.'" Bagwell, 512 U.S. at 829, *quoting* United States v. Mine Workers, 330 U.S. 258, 303-304 (1947). Unlike a fine imposed for criminal contempt which takes the form

13

of "a flat, unconditional fine" which "the contemnor has no subsequent opportunity to reduce or avoid. . . .through compliance," a "per diem fine imposed for each day a contemnor fails to comply with an affirmative court order" is a sanction for civil contempt. Bagwell, id.; see also Salazar v. D.C., 602 F.3d 431, 438 (D.C. Cir. 2010), explaining the distinctions between criminal and civil contempt fines. Such per diem fines "exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." Bagwell, id.

There are two types of civil contempt fines, the first payable to the complainant as compensation for damages caused by the contemnor's noncompliance, and the second payable to the court. Operation Rescue, 919 F.2d at 868, citing Latrobe Steel Co., 545 F.2d at 1344. The contemnor can avoid paying the second type of fine by performing the act required by the court's order. Operation Rescue, id.

3. Attorneys' fees and expenses: Where one party has obdurately failed to respond to court orders over a period of time, thus forcing the other to pursue judicial intervention, courts have not hesitated to impose a further compensatory sanction on the reluctant participant by requiring reimbursement of the attorneys' fees and expenses incurred in attempting to compel compliance. See In re Linerboard Antitrust Litig., Nos.

14

08-3493 *et al.*, 2010 U.S. App. LEXIS 935, *17 (3d Cir. Jan. 14, 2010) (compensatory sanctions may include reasonable attorneys' fees since part of the damages suffered by the prevailing party is the cost of bringing the violation to the attention of the court); *see also* Chambers, 501 U.S. at 56 (fees awarded in light of Chambers' "sordid scheme of deliberate misuse of the judicial process" and the need to ensure such abuses were not repeated); Inst. for Motivational Living v. Doulos Inst. for Strategic Consulting, Inc., No. 03-4177, 2005 U.S. App. LEXIS 20834, * 16 (3d Cir. Oct. 5, 2004) (compensatory "contempt award must relate to the actual loss (including fees and expenses) that flowed from the contemnor's violation"); Fisher-Price, Inc. v. Safety 1st, Inc., CA No. 01-51, 2008 U.S. Dist. LEXIS 36712, *12 (D. Del., May 5, 2008) (fees awarded in an amount to make the plaintiff whole after bringing contempt action); Synthes Spine Co., L.P. v. Walden, CA No. 04-4140, 2006 U.S. Dist. LEXIS 80751, * 42 (E.D. Pa. Oct. 20, 2006) (awarding reasonable value of attorneys' fees and costs, plus the plaintiff's lost management time, incurred in prosecuting successful contempt allegations.) Attorneys' fees are generally awarded only in "narrowly defined circumstances, such as a sanction for the 'willful disobedience of a court order' or where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Schoenfeld v. Kleiber, CA No. 07-4020, 2007 U.S.

Dist. LEXIS 81581, * 5 (W.D. Mo. Nov. 2, 2007) *quoting* Chambers, 501 U.S. at 45-46.

In imposing either a fine or an award of attorneys' fees and expenses, the Court must consider that such a sanction would be improper if the contemnor is financially unable to make such payments. *See* Federal Home Loan Mortg. Corp. v. Berbod Realty Assocs., L.P., CA No. 91-1033, 1994 U.S. Dist. LEXIS 21421 * 26 (S.D. N.Y. Aug. 16, 1994) (citing cases.) The burden of proving such an inability "plainly and unmistakably rests with the contemnor." Id.

## B. Sanctions Sought and General Parameters

The sanctions sought by Plaintiff are permitted by Federal Rules of Civil Procedure 11, 16, 37 and by 28 U.S.C. § 1927. Plaintiff argues that Sandretto, Mr. Filos and their counsel violated Rule 11(b) by making factual contentions (or denying factual contentions) without support in the evidence, for example, counsel denying that Mr. Filos had any connection to Polaris America when he testified later that he was CEO of that company. Mr. Filos and Sandretto violated Rule 16 inasmuch as Mr. Filos failed to attend several pretrial proceedings prior to entry of the default judgment, did not comply in a meaningful manner with the Court's discovery orders, and failed to provide complete testimony. Sandretto violated Rule 37(a)(4) or 37(b)(2)(A) by failing to comply fully with the discovery

orders.    Finally, 28 U.S.C. § 1927 allows the Court to impose sanctions when counsel has "(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct."  LaSalle Nat'l Bank v. First Conn. Holding Group…, 287 F.3d 279, 288 (3d Cir. 2002). (Supplemental Brief in Support of Plaintiff's Motion to Amend Judgment, Doc. No 76, 8-9.)

We wish to make clear that the ultimate goals of the sanctions imposed hereon on Mr. Filos and Sandretto are (1) to provide to IPEC the monies owed by Sandretto and Taylor's as the result of the default judgment, (2) to compensate IPEC, at least in part, for its expenses associated with trying to collect on that judgment for a period of more than two years, and (3) to coerce Sandretto and Mr. Filos into complying with this Court's previous orders and the default judgment.    In determining the sanctions to be applied in this case, the Court has kept in mind that it "should apply the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders. If compliance is not forthcoming, the initial penalty may be increased, or a new penalty appropriate under the circumstances may be selected."    In re Grand Jury Impaneled January 21, 1975, 529 F.2d 543, 551 (3d Cir. 1976).    For that reason, the sanctions identified below have been phased in, first applying to Sandretto, then to Mr. Filos individually, and

first taking the form of monetary penalties, then incarceration. By phasing in the sanctions, we are giving Sandretto and Mr. Filos the utmost opportunity to comply at the least cost to themselves, even though such a "warning shot" is not required before imposing any sanction. See Tequila Centinela, S.A. de C.V. v. Bacardi & Co., CA No. 04-2201, 2007 U.S. Dist. LEXIS 22887, *10 (D D.C. Mar. 29, 2007) ("When the possibility of imposing serious sanctions on the parties arises, the Court need not fire a warning shot over the bow of a party before doing so.") We are particularly mindful that when the sanctions potentially include incarceration, this Court should "tread carefully." Andrews v. Holloway, CA No. 95-1047, 2009 U.S. Dist. LEXIS 20199, *39-*40 (D. N.J. Mar. 12, 2009), citing Northeast Women's Ctr., Inc. v. McMonagle, 939 F.2d 57, 70 (3d Cir. 1991).

## C. Sanctions against Sandretto

Although Mr. Filos testified at the hearing on June 14, 2010, that he believed Sandretto had ceased operations at the end of 2007 or in 2008, he could not explain why neither the Court nor IPEC had been informed of this fact in a timely manner, or why no steps were taken in Ohio to formally dissolve the corporation or tie up its business affairs. In written answers to interrogatories provided to IPEC, Mr. Filos also

stated that "Sandretto USA [c]losed operations in 2007 after losing its distributorship in 2006." (Doc. No. 94, Exh. B.)

Contrary to Mr. Filos's statements, the record is clear that Sandretto was alive and functioning in 2007 and 2008. For instance, Mr. Filos and IPEC were in frequent e-mail communication through at least late July 2007. (Doc. No. 28, Exh. 20 to Exh. A.) Sandretto and Taylor's hired local counsel in September 2007 (Doc. Nos. 4 and 5); there was no hint that Sandretto had closed as of February 2008 when the parties assured the Court that they were proceeding "in good faith" but needed additional time to "discuss an amicable resolution." (Doc. No. 14.) Mr. Filos was deposed on April 1, 2008, and spoke of Sandretto in the present tense. (Doc. No. 21, Exh. A.) Mr. Eichler signed a declaration on May 21, 2008, stating that he had been associated with Sandretto for the past three years. (Doc. No. 21, Exh. E.) On October 24, 2008, Defendants sought an extension of time to complete mediation so that Mr. Filos could participate; that mediation actually took place on November 18, apparently with no indication from Mr. Filos that Sandretto was no longer operating. (Doc. Nos. 35 and 37.) The testimony that Sandretto went "out of business" in 2008 is further contradicted by the fact that it is still listed as an

active corporation on the Ohio Secretary of State internet business filings website.[6]

As previously noted, this Court cannot impose further sanctions on Sandretto for events which occurred prior to the entry of the default judgment. (See Memorandum Opinion, Doc. No. 79 at 10.) But because a command to a corporation "is in effect a command to those who are officially responsible for the conduct of its affairs," if those officials "prevent compliance or fail to take appropriate action within their power for the performance of a corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt." Wilson v. United States, 221 U.S. 361, 376 (1911). The Court has previously found, by clear and convincing evidence, that Sandretto, through the action and inaction of its president and chief executive officer Christopher Filos, (1) failed to respond with candor and completeness to the discovery in aid of execution served on Sandretto and numerous officers on October 9, 2009; (2) failed to respond completely to the supplemental requests for production served on Sandretto and Mr. Filos on October 14, 2010 (Doc. No. 90); and (3) presented incomplete and misleading testimony and assertions to the Court and to IPEC on at least

---

[6] See www2.sos.state.oh.us/pls/bsqry/f?p=100:2:517412584340627::NO:RP::, last visited March 24, 2011, showing that Sandretto USA, Inc. is "active" and is located in Middleburg Heights, Cuyahoga County, Ohio.

three occasions between March 2010 when the motion for default judgment was filed and the last hearing on October 13, 2010.[7] At none of the hearings and in none of its pleadings has Sandretto come forward with any substantive evidence that it made reasonable efforts to comply with the Court's earlier orders, instead offering in some instances nothing more than transparent excuses, e.g., a malfunctioning photocopier at the Morrow County storage facility precluded Sandretto from providing documents in response to the discovery in aid of execution, and in other instances, e.g., failing to respond to the Order of October 13, 2010, offering no excuse at all. But neither Sandretto nor Mr. Filos has ever argued that the Order to respond fully and completely to the discovery in aid of execution was unclear or ambiguous. *See,* e.g., Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144-145 (2d Cir. 2010) (court may hold party in contempt for failure to comply with an order where the order "is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply.")

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides a number of options for the court when a party fails to

---

We also find Sandretto in contempt for failing to respond to this Court's Order of October 13, 2010, in which the attorneys for Sandretto, Mr. Filos and IPEC were directed to advise the Court of the status of Plaintiff's post-judgment claims. However, inasmuch as filing such a report at this stage would be irrelevant, the Court imposes no sanctions for that failure.

21

obey an order to provide discovery, including treating as contempt of court the failure to obey that order. In addition, Rule 37(b)(2)(C) allows the Court to order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

This Court has the authority to impose monetary sanctions even when the merits of the case are no longer before it. Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8ᵗʰ Cir. 1998). As a general rule, a court should not impose a monetary fine without notice and an opportunity to respond. See Lai v. Huilin Wei, No. 07-3842, 2009 U.S. App. LEXIS 11070, *6 (3d Cir. May 22, 2009), citing Eash v. Riggins Trucking Inc., 757 F.2d 557, 570 (3d Cir. 1985). Nor should the court impose a monetary fine or an addition to the judgment when the contemnor is financially unable to make any payment. Federal Home Loan Mortg. Corp., supra; Badgley v. Santacroce, 800 F.2d 33, 37 (2d Cir. 1986). Sandretto has had ample opportunity to respond to the Motion for sanctions, including Plaintiff's suggestion that it be subject to a fine of $1,000 per day for its failure to respond to the discovery in aid of execution, yet has taken no steps to avoid such a sanction. In fact, in its pleading filed in response to the Court's order to summarize arguments which would be made at

the October 13, 2010 hearing when the Court would consider the scope of the sanctions to be imposed, Sandretto's only argument was that monetary sanctions imposed "may ring hollow" because of Sandretto's alleged defunct condition and other judgments against the corporation. (Doc. No. 81 at 5.) Not one iota of evidence or legal argument is provided to support these statements.

In the past, when faced with the option of obtaining Taylor's compliance with an order of court or becoming personally liable to pay the balance due on a judgment against Taylor's, and the further possibility of becoming subject to arrest and imprisonment for civil contempt, Mr. Filos was able to promptly arrange the settlement. See Motion at 9 and Exhibit B thereto, slip op. dated May 18, 2006, Pascal Engineering, Inc. v. Taylor's Industrial Services, LLC, CA No. 04-845, U.S. District Court for the Southern District of Ohio. We believe with sufficient motivation, Sandretto and/or Mr. Filos will be able to comply with the Order attached hereto as well.

The Court therefore agrees with Plaintiff that a monetary sanction should be imposed for each day on which Sandretto fails to take any substantive steps to provide responses to the discovery in aid of execution. Failure to respond to a court order directing responses to interrogatories is an act sufficiently egregious to result in the imposition of a daily

23

fine. *See*, e.g., Ohntrup v. Makina ve Kimya Endustrisi Kurumu, CA No. 76-742, 2007 U.S. Dist. LEXIS 28573, *2-*3 (E.D. Pa. Apr. 16, 2007) (referring to the previous imposition of a daily fine of $10,000 until such time as the defendant complied.) Here, Plaintiff seeks a coercive per diem penalty of $ 1,000, starting 20 days after the date on which this Court once again orders Defendants and Mr. Filos to respond fully to the discovery in aid of execution. (Brief in Support of Motion to Amend and for Sanctions, Doc. No. 52, at 8.) As discussed above, the Supreme Court has approved the use of such a sanction as a means of coercing a recalcitrant party to comply. *See* Bagwell, 512 U.S. at 828. Therefore, as explained in more detail in the Order attached hereto, beginning 20 days after the date hereof, Sandretto shall pay $1,000.00 per day to the Clerk of Court, for the account of IPEC, and shall continue to do so until **complete and substantive responses** to the discovery in aid of execution have been provided to IPEC.

Additional sanctions against Sandretto shall also be imposed, but because they also involve Mr. Filos individually, they are discussed in the following section.

D.  Sanctions against Christopher Filos

Based on the pleadings filed by his attorney and his testimony at the hearings held in this matter, this Court is firmly convinced that Mr. Filos has deliberately done everything

in his power to help his corporations, Sandretto and Taylor's, evade not only the default judgment entered in this case, but numerous other obligations as well. When asked to present in writing prior to the October 13, 2010 hearing the arguments that would be made on his behalf as to why sanctions should not be imposed, the only issue addressed was how he could "purge himself of a civil contempt finding where he no longer has access to documents for which the Court has ordered production." (Brief of Christopher Filos, Doc. No. 86, "Filos Brief," at 1.) The only reason given for failing to fully comply with the discovery in aid of execution is that any further compliance is impossible inasmuch as most of the documents sought are outside his control in the hands of the Morrow County prosecutor. Mr. Filos also assured the Court that he intended as of October 8, 2010, to "waive any and all common law rights he may have in order to assist Plaintiff in obtaining access to all additional relevant records." (Filos Brief at 2.)

As the evidence has shown, Mr. Filos had more than four months to comply with the discovery requests before the Morrow County prosecutor seized his records. Furthermore, as IPEC has pointed out, there are readily available alternative sources for many of those records, for example, banks, accountants, county and state offices, parties with whom Sandretto had contracts, insurers, brokers, the Individuals, etc. (Supplemental Brief in

Support of Motion to Amend and for Sanctions, Doc. No. 76, at 6-8.) Yet, Mr. Filos has never presented evidence that he took any steps whatsoever to comply with this Court's orders that he respond to the discovery in aid of execution even after it was served on him for the second time.

Contrary to his protestations, the Court does not believe that "compliance is now factually impossible." (Filos Brief at 7, *quoting* Camerons Hardware v. Independence Blue Cross, No. 09-1973, 2010 U.S. App. LEXIS 2028, *8 (3d Cir. Jan. 29, 2010).) The status report provided by Plaintiff on February 14, 2011 (Doc. No. 96), reflects absolutely no effort by Mr. Filos to assist IPEC in retrieving the relevant records, contrary to his assertions in October 2010.[8] Mr. Filos argues that his acts of failing to comply with prior discovery orders, "while arguably negligent, were not intentional," and were exacerbated by his "unenviable financial condition." (Filos Brief at 3.) But the Court need not find that Mr. Filos intentionally refused to comply with the Court's order to respond to the discovery in aid of execution; rather the conclusion that his actions were "willful" or "self-serving" is sufficient to impose sanctions. *See*, e.g., Andrews, 2009 U.S. Dist. LEXIS 20188 at *44, relying on Adams v. Trustees of New Jersey Brewery Employees' Pension

---

[8] Had Mr. Filos filed a status report as ordered by the Court on October 13, 2010, perhaps the Court would be cognizant of such activities.

Trust Fund, 29 F.3d 863, 875 (3d Cir. 1994), and concluding that "dishonest, evasive and misleading testimony" and actions reflecting an intent never to pay any part of the judgment against him were sufficient to find the defendant's conduct "intentional and self-serving such that it was the product of willfulness and bad faith." Nor does the Court perceive any correlation between Mr. Filos's alleged "unenviable financial condition" and his violation of Court Orders. Rather, in order to establish the "present inability to comply" with an order of court -- an acknowledged defense to sanctions for civil contempt -- alleged contemnors "must establish: (1) that they were unable to comply, explaining why **categorically and in detail**, (2) that their inability to comply was **not self-induced**, and (3) that they made in good faith **all reasonable efforts** to comply." Chicago Truck Drivers Union Pension Fund v. Brotherhood Labor Leasing, 207 F.3d 500, 506 (8th Cir. 2000) (internal citations and quotations omitted; emphasis added by this Court); *see also* Rylander, 460 U.S. at 757 (the contemnor has the burden of producing evidence he is unable to comply.)

Mr. Filos argues that he has repeatedly appeared in this matter, attempted to respond to the discovery in aid of execution and the additional requests in October 2010, answered as completely as he could all questions posed to him at the hearings and at his deposition, and sent a paralegal to his now-

closed business entities to search for relevant documents. (Filos Brief at 2.) These statements, apparently offered as evidence of good faith, are not a defense to a motion for civil contempt. Roslies-Perez v. Superior Forestry Serv., 652 F. Supp.2d 887, 969 (M.D. Tenn. 2009). Mr. Filos produced no evidence, for instance, that he took "all reasonable steps" to provide the documents requested, e.g., getting them from various sources other than the files seized by the Morrow County prosecutor. As discussed above and in the September 29, 2010 Memorandum Opinion, the Court questions the degree to which Mr. Filos has been forthright in his answers to the discovery in aid of execution or to the supplemental requests made on October 14, 2010. Mr. Filos's testimony before this Court could best be described as "evasive," even on relatively simple matters.

However, the failure to provide responses to the discovery requests and his testimony are not the only sources of Mr. Filos's contempt. He failed to comply with the Court's Order of May 11, 2010, that he respond fully to the request for production within seven days and that he produce the documents held by the Morrow County prosecutor shortly thereafter, but did not request an extension of time for responding, responded incompletely two days before the next scheduled hearing, and did not offer any excuse at the next hearing on June 15, 2010, except to say in so many words that if counsel for IPEC wanted

the documents, he could get them from the county prosecutor himself. This attempt to shift the burden of production from Sandretto and Mr. Filos to IPEC (which is repeated in Sandretto's Supplemental Brief in Opposition to Plaintiff's Motion, Doc. No. 77, at 5-6), is entirely improper and self-serving.

Having rejected all of Mr. Filos's arguments as to why sanctions should not be imposed upon him personally, the question then becomes, what sanctions shall be applied?

1. *Addition as a judgment debtor*: Mr. Filos argues that he cannot be made a judgment debtor on the March 11, 2009, default judgment entered against Sandretto and Taylor's based on the holding of the Supreme Court's decision in Nelson v. Adams United States, 529 U.S. 460 (2000). (Doc No. 77 at 3.) He contends that the appropriate – and in fact only -- option is for IPEC to file a separate complaint against him and any other Individuals and pursue the case through the normal procedures of a civil case. (Id. at 3-4.) We are compelled to agree.

In Nelson, Ohio Cellular Products Corp. ("OCP") sued Adams, U.S.A., Inc. ("Adams"), for patent infringement. Adams was awarded attorney fees against OCP but believed the company did not have sufficient assets to pay the award. It therefore sought to amend its pleadings to add Donald Nelson, OCP's president and sole shareholder, as a party and simultaneously

moved to amend the judgment to hold Nelson responsible. The District Court granted both motions and the Court of Appeals affirmed. The Supreme Court reversed, however, holding that fundamental due process considerations require that an added party have the opportunity to respond before judgment is entered against him personally, even if he were previously aware of the litigation. Nelson, 529 U.S. at 465-467. The failure to allow Nelson to respond before judgment was entered against him violated both Fed. R. Civ. P. 15 and 12 as well as Nelson's constitutional due process rights. This violation occurred in spite of the fact that Nelson knew as soon as Adams moved to amend the pleading and alter the judgment that he might be subjected to personal liability. The Court noted that although one might argue that Nelson consequently had a fair chance to respond and be heard, "Rule 15 and the due process for which it provides. . .demand a more reliable and orderly course." Nelson, id. at 466-467.

In arriving at this conclusion, the Supreme Court explicitly rejected the idea that the district court had erred by permitting amendment to add Nelson as a party, given Adams' concern that the judgment might not otherwise be collectible. Rather, it was the "instantaneous imposition of personal liability on Nelson (without relying on any theory of corporate veil piercing)" that was erroneous. The Court further noted

that its decision would not insulate Nelson entirely from liability. As another court has explained, "[i]n Nelson, all the company president won was the due process right. . .to contest on the merits his personal liability for the fees that were originally imposed solely on the company." Applied Materials, Inc. v. Multimetrixs, LLC, CA No. 06-7372, 2009 U.S. Dist. LEXIS 44061, *15 (N.D. Cal. May 26, 2006).

Although it falls within the context of patent law, the procedural history of Applied Materials is quite similar to the events herein. The plaintiff, Applied Materials, asserted that its own engineers had invented a specialized sensing device, contrary to the claims of defendant Multimetrixs. During a bench trial on the issue of inventorship, the court *sua sponte* raised the issue of inequitable conduct before the Patent and Trademark Office ("PTO") when it learned that one of the defendant's principals had caused Multimetrixs to submit forged signatures to the PTO. In its subsequent decision, the court declared the patent unenforceable by reason of that inequitable conduct. When the defendant's counsel filed a motion to withdraw (based on the fact that one of the principals had lied about the forgery under oath), the court granted the motion but stayed the case for 30 days to allow Multimetrixs to locate new counsel. Applied Materials, 2009 U.S. Dist. LEXIS 44061 at *2-

*5; *see also* an earlier opinion in this case at 2008 U.S. Dist. LEXIS 55635 (N.D. Cal. July 18, 2008).

Applied Materials subsequently moved for sanctions against the three principals of Multimetrixs for their personal bad faith misconduct in acquiring the patent and requested that the court hold those individuals jointly and severally liable for an award of attorneys' fees which is permitted by patent law in certain instances deemed "exceptional cases." Multimetrixs, still unrepresented, failed to respond to Applied Materials' motion, but counsel for the non-party individuals opposed the motion, while explicitly denying that the court had any jurisdiction over them. The individuals argued they should not be held personally liable for the fees for two reasons: First, they were never served with any of the papers in the case and second, relying on Nelson, they argued that the court had no power to award fees against a non-party without the due process of an amended proceeding, service, and an opportunity to respond to the pleading and contest the allegations. Applied Materials, 2009 U.S. Dist. LEXIS 44061 at *9-*10.[9]

The court concluded that because of the defendant's litigation misconduct and its inequitable conduct in prosecuting the patent, the attorneys' fee award was appropriate and

---

[9] The individuals offered a second due process argument not relevant to this matter, i.e., that the issue of inequitable conduct *per se* had never actually been tried. Id. at *10-*11.

supported by case law. It also found, however, that pursuant to
the reasoning and holding of Nelson, due process required that
the three individuals had to be named as parties and be given
the opportunity to respond and be heard before being subjected
to a judgment of personal liability for those fees. It
therefore ordered Multimetrixs to pay the attorneys' fees of
more than $1.4 million within 60 days of the order and granted
Applied Materials leave to file an amended complaint or initiate
other proceedings if Multimetrixs failed to pay any or all of
that amount in the time allotted. Id. at *14-*15.

IPEC argues that this case is distinguishable from Nelson
because Mr. Filos not only guided the underlying litigation as
the president, chief executive officer and/or sole shareholder
of both Taylor's and Sandretto, he has had over a year and
multiple opportunities to defend himself, knowing that IPEC
sought to have him made an additional judgment debtor. In
short, Plaintiff argues, Mr. Filos's due process rights have
been satisfied because he has already had multiple opportunities
to be heard. We are compelled, however, to conclude that like
Nelson and the principals of Multimetrixs, Mr. Filos is entitled
to the full panoply of due process, which includes an explicit
statement of the claims and legal theories under which IPEC
seeks to hold him personally liable for the default judgment.

We therefore deny Plaintiff's motion to add Mr. Filos or any of the Individuals as judgment debtors.

2. *Reimbursement of attorneys' fees:* Since March 9, 2010, when IPEC filed its motion to amend the judgment and for sanctions, Plaintiff has filed some ten additional pleadings with the Court, served Defendants at least twice with the discovery in aid of execution plus follow-up interrogatories, and appeared before this Court on at least four separate occasions. We find that because of the recalcitrant behavior of Mr. Filos personally, these proceedings have consumed far more time than necessary and have resulted in IPEC undoubtedly incurring unnecessary attorneys' fees and expenses in an effort to gain cooperation from Sandretto in this matter. In addition, at least two IPEC senior managers, president Joseph Giordano and chief financial officer Shawn Fabry, attended one or more hearings on behalf of Plaintiff.

Plaintiff does not specifically seek an award of attorneys' fees, costs, and expenses incurred in pursuing the pending motion. As noted above, however, compensatory fines are an appropriate remedy for civil contempt, as long as it can be shown that the fine is "based upon evidence of complainant's actual loss." McDonald's Corp., 727 F.2d at 87; *see also* Robin Woods, Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994) ("Compensatory awards. . .remedy past noncompliance with a

decree. . .not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held" prior to the noncompliance) (internal quotation omitted.) Given the extraordinary measures IPEC has been forced to pursue in its attempt to compel Sandretto's responses to the discovery in aid of execution, we find that IPEC is entitled to this compensatory relief.

As explained in more detail in the Order attached hereto, we therefore order that within ten (10) days of the date hereof, IPEC shall file with the Court an accounting of all legal fees and expenses it has incurred in this matter, beginning on November 9, 2009, the day on which Sandretto's initial responses to the discovery in aid of execution were due. We have chosen this starting date because we do not believe it is unreasonable or unusual for a creditor to incur some costs in pursuing a default judgment as IPEC did between March 11, 2009, and when it became obvious Sandretto and Taylor's were not going to cooperate with IPEC's efforts. The period for which IPEC is to be reimbursed shall extend through February 14, 2011, the date on which Plaintiff submitted the second of two status reports requested by the Court. These dates reflect the period in which IPEC was forced to take more extreme measures in its attempt execute on the default judgment, a period which was extended by Sandretto's and Mr. Filos's lack of cooperation. IPEC shall

also provide evidence of the management expenses associated with Messrs. Giordano, Fabry and any other senior IPEC staff or officer who was required to attend the hearings or otherwise lost management time in connection with pursing the Motion for sanctions. *See* Synthes Spine, 2006 U.S. Dist. LEXIS 80751 at * 55 (calculation of attorneys' fees and costs included the value of the time of Synthes' employees spent assisting with the preparation and prosecution of the contempt motion.)

The Court shall review the accounting to determine if it is reasonable and shall submit the accounting to Sandretto and Mr. Filos. Sandretto shall, within ten (10) days of the date on which the statement is submitted, pay to IPEC the outstanding amount in full. Should Sandretto not pay the statement as directed, Mr. Filos shall become personally responsible for the fees and expenses and shall pay that amount to IPEC within twenty (20) days of the date on which the statement was submitted to Sandretto.

3. *Arrest and incarceration:* Finally, as principal of Sandretto, Mr. Filos is subject to incarceration for any failure of the corporation to pay the $1,000 per diem fine or the reimbursement due to IPEC for litigation expenses as described in the previous section. If Mr. Filos does not secure Sandretto's compliance with the above sanctions or if he does not personally reimburse the litigation expenses, he shall be

ordered to appear immediately before this Court to present evidence that Sandretto and he cannot presently comply with this Order. Mr. Filos should bear in mind, however, that the Court will entertain the argument that he or Sandretto cannot presently pay the fine or reimburse the litigation expenses only if he offers evidence of "factual impossibility" to do so. Gewin, 2010 U.S. Dist. LEXIS 16000, at * 13, *citing* Rylander, 460 U.S. at 757; *see also* Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) (the evidence offered to establish the inability to comply must be clear, plain, and unmistakable); Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991) (contemnor must offer proof beyond "a mere assertion of inability.") Mr. Filos's failure to appear before the Court or to present such evidence shall result in his immediate arrest and imprisonment for civil contempt until he complies with this Order or causes Sandretto to comply.

It should be clear from the way in which the Court has structured the progressive sanctions that it is not our intent to punish Mr. Filos for his former behavior, although many of his past actions and representations to the Court could well be considered "vexatious." We only seek to make it clear that the Court's orders must be complied with and that doing so will relieve him immediately of the possibility of incarceration. *See* Lundy v. Yost, No. 08-4190, 2011 U.S. App. LEXIS 102, * 16

(3d Cir. Jan 4, 2011); Operation Rescue, 919 F.2d at 868. As has been made abundantly clear herein, Mr. Filos will not be incarcerated for even one day if he directs Sandretto to respond to the discovery in aid of execution and to pay any per diem fine and IPEC's litigation costs, personally pays the litigation costs, or presents clear, plain, and unmistakable evidence of the present inability to comply with this Order.

Moreover, as the attached Order states, if Mr. Filos is incarcerated, the per diem fine will cease unless and until further proceedings are held to determine if it is appropriate. See In re Grand Jury, 529 F.2d at 551 (fines or imprisonment in civil contempt should be used interchangeably or successively but not simultaneously in the absence of findings supported by the record showing the necessity for such severe actions.)

Finally, we offer Sandretto and Mr. Filos a simple, straight-forward means of avoiding the fine and potential for incarceration. If the default judgment, together with any applicable interest which may have accrued, is paid in full within ten (10) days of the date of this Memorandum Opinion and Order, upon confirmation of that fact by IPEC, the Court shall rescind the attached Order in its entirety.

E.    Other Sanctions

IPEC also seeks sanctions against Sandretto's attorneys, specifically under 28 US.C. § 1927, which allows

courts to sanction an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" by requiring them to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This Court's review of all the evidence in this case, as well as our personal observations regarding counsel for Sandretto, the Individuals, and Mr. Filos, gives no cause for complaint about their actions in this matter. To the extent Plaintiff's Motion rests on Section 1927 therefore, it is denied.

An appropriate Order follows.

April ___, 2011

William L. Standish
United States District Judge